RODERICK CROCHIERE *v.* BOARD OF EDUCATION
OF THE TOWN OF ENFIELD ET AL.
(14669)

PETERS, C. J., CALLAHAN, BERDON, KATZ and PALMER, Js.

Argued June 9—decision released August 24, 1993

*David C. Davis,* with whom, on the brief, was *William C. Brown,* for the appellants (defendants).

*Leon M. Rosenblatt,* for the appellee (plaintiff).

KATZ, J. The defendant, the board of education of the town of Enfield,[1] appeals from the decision of the compensation review division affirming an award by the workers' compensation commissioner (commissioner) to one of the defendant's tenured teachers, the plaintiff, Roderick Crochiere, for work-related mental injuries. In accordance with General Statutes (Rev. to 1989) § 31-301 (b), the defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The defendant claims that: (1) the commissioner was precluded from hearing the plaintiff's claim on the grounds of collateral estoppel and res judicata; (2) the commissioner lacked jurisdiction over the hearing because the plaintiff failed to comply with the time limitations of General Statutes (Rev. to 1989) § 31-294; (3) mental injury without a physical component is not compensable; (4) mental injury resulting from termination is not compensable; (5) mental injury resulting from a deviation from employment or willful and serious misconduct is not compensable; and (6) the commissioner incorrectly failed to admit into evidence a

---

[1] Although Frank B. Hall Risk Management, Inc., is also a defendant in this appeal, we will refer to the board of education of the town of Enfield as the defendant.

transcript from another proceeding. We affirm the judgment of the compensation review division.

The following facts are undisputed. The plaintiff was a tenured music teacher at the Harriet Beecher Stowe Elementary School in Enfield. In June, 1987, the parents of S,[2] a female student at the school, registered a complaint with the defendant concerning the conduct of the plaintiff. The parents alleged several instances of inappropriate touching of their daughter by the plaintiff. S then wrote a statement describing one of the incidents that had occurred two months earlier. Reports of the accusations appeared on several local television and radio stations and also in many newspapers, one of which published fifty-two articles about the plaintiff.

The plaintiff was suspended from his employment in June, 1987, and never returned to work. The defendant continued to pay the plaintiff during his suspension. A termination hearing, in accordance with General Statutes § 10-151,[3] was held and the plaintiff was terminated on October 21, 1987.

---

[2] The student will be referred to as S throughout this opinion.

[3] General Statutes § 10-151 provides: "EMPLOYMENT OF TEACHERS. DEFI-NITIONS. NOTICE AND HEARING ON FAILURE TO RENEW OR TERMINATION OF CONTRACT. APPEAL. (a) For the purposes of this section:

"(1) The term 'board of education' shall mean a local or regional board of education or the board of trustees of an incorporated or endowed high school or academy approved pursuant to section 10-34, which is located in this state;

"(2) The term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the state board of education;

"(3) The term 'continuous employment' means that time during which the teacher is employed without any break in employment as a teacher for the same board of education;

"(4) The term 'full-time employment' means a teacher's employment in a position at a salary rate of fifty per cent or more of the salary rate of such teacher in such position if such position were full-time;

"(5) The term 'part-time employment' means a teacher's employment in a position at a salary rate of less than fifty per cent of the salary rate of such teacher in such position, if such position were full-time;

The plaintiff subsequently submitted a claim for

"(6) The term 'tenure' means:

"(A) The completion of thirty school months of full-time continuous employment for the same board of education. For purposes of calculating continuous employment towards tenure, the following shall apply: (i) For a teacher who has not attained tenure, two school months of part-time continuous employment by such teacher shall equal one school month of full-time continuous employment except, for a teacher employed in a part-time position at a salary rate of less than twenty-five per cent of the salary rate of a teacher in such position, if such position were full-time, three school months of part-time continuous employment shall equal one school month of full-time continuous employment; (ii) a teacher who has not attained tenure shall not count layoff time towards tenure, except that if such teacher is reemployed by the same board of education within five calendar years of the layoff, such teacher may count the previous continuous employment immediately prior to the layoff towards tenure; and (iii) a teacher who has not attained tenure shall not count authorized leave time towards tenure if such time exceeds ninety student school days in any one school year, provided only the student school days worked that year by such teacher shall count towards tenure and shall be computed on the basis of eighteen student school days or the greater fraction thereof equaling one school month.

"(B) For a teacher who has attained tenure prior to layoff, tenure shall resume if such teacher is reemployed by the same board of education within five calendar years of the layoff.

"(C) Except as provided in subparagraph (B) of this subdivision, any teacher who has attained tenure with any one board of education and whose employment with such board ends for any reason and who is reemployed by such board or is subsequently employed by any other board, shall attain tenure after completion of sixteen school months of continuous employment. The provisions of this subparagraph shall not apply if, (i) prior to completion of the sixteenth school month following commencement of employment by such board, such teacher has been notified in writing that his or her contract will not be renewed for the following school year or (ii) for a period of five or more calendar years immediately prior to such subsequent employment, such teacher has not been employed by any board of education.

"(7) The term 'school month' means any calendar month other than July or August in which a teacher is employed as a teacher at least one-half of the student school days. . . .

"(d) The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such

workers' compensation benefits pursuant to General

teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. Nothing in this section or in any other section of the general statutes or of any special act shall preclude a board of education from making an agreement with an exclusive bargaining representative which contains a recall provision. Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing. A board of education may designate a subcommittee of three or more board members to conduct hearings and submit written findings and recommendations to the board for final disposition in the case of teachers whose contracts are terminated for the reasons stated in subdivision (5) of this subsection. Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, (A) before the board of education or a subcommittee of the board, (B) if indicated in such request or if designated by the board before an impartial hearing panel or, (C) if the parties mutually agree, before a single impartial hearing officer chosen by both parties. If the parties are unable to agree upon the choice of a hearing officer within five days after their decision to use a hearing officer, the hearing shall be held before the board or panel, as the case may be. The impartial hearing panel shall consist of three members appointed as follows: The board of education shall appoint one panel member, the teacher shall appoint one panel member, and those two panel members shall choose a third, who shall serve as chairperson. Within ninety days after receipt of the request for a hearing, the impartial hearing panel, subcommittee of the board or hearing officer, unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer. Each party shall pay the fee of the panel member selected by it and shall share equally the fee of the third panel member or hearing officer and all other costs

Statutes (Rev. to 1989) § 31-294[4] on the basis of the mental stress that he had experienced beginning in June, 1987. The plaintiff claimed that this "work

incidental to the hearing. If the hearing is before the board of education, the board shall render its decision within fifteen days after the close of such hearing, and shall send a copy of its decision to the teacher. The hearing shall be public if the teacher so requests or the board, panel or subcommittee so designates. The teacher concerned shall have the right to appear with counsel at the hearing, whether public or private. A copy of a transcript of the proceedings of the hearing shall be furnished by the board of education, upon written request by the teacher within fifteen days after the board's decision, provided the teacher shall assume the cost of any such copy. Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section.

"(e) The provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of this section in the event of conflict.

"(f) Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the superior court. Such appeal shall be made returnable to said court in the same manner as is prescribed for civil actions brought to said court. Any such appeal shall be a privileged case to be heard by the court as soon after the return day as is practicable. The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearing held by the board of education or by an impartial hearing panel for such teacher, together with such other documents, or certified copies thereof, as shall constitute the record of the case. The court, upon such appeal, shall review the proceedings of such hearing and shall allow any party to such appeal to introduce evidence in addition to the contents of such transcript, if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court, upon such appeal and after a hearing thereon, may affirm or reverse the decision appealed from. Costs shall not be allowed against the board of education unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

[4] General Statutes (Rev. to 1989) § 31-294 provides in pertinent part: "NOTICE OF INJURY AND OF CLAIM FOR COMPENSATION. Any employee who has sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing his employer, of such injury; and, on his failure to give such notice, the commissioner may reduce the award of compensation proportionately to any prejudice which he finds the employer has sustained by reason of such failure; but the burden of proof

related" stress resulted from false accusations that had been made against him and caused him to suffer a nervous breakdown, leading to his involuntary hospitalization on December 25, 1987. The plaintiff claimed benefits for temporary total disability from December 25, 1987, to October 31, 1988, and temporary partial disability from November 1, 1988, to the present.

Pursuant to General Statutes (Rev. to 1989) § 31-297,[5] the commissioner heard evidence on various dates between September 15, 1989, and June 8, 1990, and issued his findings and award on June 28, 1990. The commissioner awarded benefits to the plaintiff because he found that the plaintiff had established a mental injury as a result of unsubstantiated charges having been brought against him by his former student.

with respect to such prejudice shall rest upon the employer. No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . ."

[5] General Statutes (Rev. to 1989) § 31-297 provides in part: "HEARING OF CLAIMS. (a) If an employer and his injured employee, or his legal representative, as the case may be, fail to reach an agreement in regard to compensation under the provisions of this chapter, either party may notify the commissioner of such failure. Upon such notice, or upon the knowledge that an agreement has not been reached in a case in which a right to compensation may exist, the commissioner shall schedule an early hearing upon the matter, giving both parties notice of time and place not less than ten days prior to the date appointed; provided the commissioner may, on finding an emergency to exist, give such notice as he finds reasonable under the circumstances. If no such agreement has been reached within sixty days after the date notice of claim for compensation was received by the commissioner, as provided in section 31-294c, a formal hearing shall be scheduled on the claim and held within thirty days after the end of such sixty-day period, except that if an earlier hearing date has previously been scheduled, the earlier date shall prevail. Hearings shall be held, if practicable, in the town in which the injured employee resides; and, if such place is not practicable, in such other convenient place as the commissioner may prescribe. Sufficient notice of such hearing may be given to the parties in interest by a brief written statement in ordinary terms of the date, place and nature of the injury upon which the claim for compensation is based."

The commissioner found, inter alia, that: no credible evidence had been introduced to suggest that the plaintiff had touched S or any other student in any sexual or abusive manner; the accusations made against him and the numerous media accounts reporting the complaints had had a devastating effect on him, causing him to suffer stress, anger, resentment, humiliation, and loss of self esteem; these effects, which emanated primarily from the complaints and accusations against him and which arose out of and in the course of his employment had caused the plaintiff to experience a continuum of psychological decompensation causing a nervous breakdown on December 25, 1987, followed by involuntary hospitalization; he had remained totally incapacitated through October 31, 1988; and he had continued to be partially incapacitated from November 1, 1988, through August 2, 1989, at which time he was still unable to return to work as a music teacher.

The defendant thereafter appealed to the compensation review division[6] (review division) pursuant to General Statutes (Rev. to 1989) § 31-301 (a)[7] claiming that: (1) the plaintiff's claim was untimely under § 31-294; (2) the plaintiff's mental injury was not com-

---

[6] The plaintiff also cross appealed from the commissioner's decision claiming that the commissioner had improperly failed "to grant preclusion of defenses and an irrebuttable presumption of compensability under [General Statutes (Rev. to 1989)] § 31-297 (b)." The review division dismissed the appeal as untimely. The plaintiff has not appealed the review division's decision to this court.

[7] General Statutes (Rev. to 1989) § 31-301 provides in pertinent part: "APPEALS TO COMPENSATION REVIEW DIVISION. PAYMENT OF AWARD DURING PENDENCY OF APPEAL. (a) At any time within ten days after entry of such award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the compensation review division by filing in the office of the commissioner from which such award or such decision on a motion originated an appeal petition and five copies thereof. Such commissioner within three days thereafter shall mail such petition and three copies thereof to the chairman of the compensation review division and a copy thereof to the adverse party or parties. . . ."

pensable because: (a) it flowed in part from a termination proceeding; (b) it was caused by his own willful misconduct; and (c) it was not in conjunction with a physical injury; (3) the commissioner incorrectly excluded a transcript of testimony from the plaintiff's prior termination hearing; and (4) the commissioner was collaterally estopped from inquiring into the plaintiff's alleged willful misconduct because, it claimed, that issue had already been adjudicated as part of the earlier termination proceedings.[8]

The review division affirmed the commissioner's decision. It concluded that because the plaintiff's last day on the job and his last day of exposure to the claimed injury was October 21, 1987, the notice of claim filed on September 22, 1988, had been timely under the one year limit for filing repetitive trauma claims and the three year limit for occupational disease claims as set forth in § 31-294.[9] The review division further con-

---

[8] The defendant's appeal to the review division also challenged the commissioner's failure to rule on an amended motion to correct. This claim is not before this court and, therefore, no further discussion is warranted.

[9] General Statutes (Rev. to 1989) § 31-294 provides in pertinent part: "NOTICE OF INJURY AND OF CLAIM FOR COMPENSATION. Any employee who has sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing his employer, of such injury . . . . Such notice may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting therefrom, or the date of the first manifestation of a symptom of the occupational disease and the nature of such disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. If there has been a hearing or a written request for a hearing or an assignment for a hearing within said one-year period from the date of the accident or within said three-year period from the first manifestation of a symptom of the occupational disease, as defined herein as the case may be, or if a voluntary agreement has been submitted within the applicable period, or if within the applicable period an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as hereafter provided in this section, no want of such notice of claim shall be a bar to the maintenance of proceedings and in no case shall any defect or

cluded that the plaintiff's mental illness was compensable because, as the commissioner had concluded, the mental illness did not flow from his termination or result from his misconduct or any deprivation from employment, and because there need not be a physical component to a disabling mental injury. In considering the issue of collateral estoppel, which the defendant claimed should have precluded the commissioner from hearing evidence on the issue of the plaintiff's termination, the review division noted that the defendant had neglected to raise this issue before the commissioner. The review division nevertheless concluded that because the record did not reflect the ultimate basis of the 1987 termination pursuant to the hearing held under § 10-151, the defendant could not prevail on its claim that the termination hearing had a collateral estoppel effect on the plaintiff's workers' compensation claim. Lastly, the review division affirmed the commissioner's decision to preclude a transcript of testimony from the earlier termination hearing because the defendant had not demonstrated the witness' unavailability.

The defendant thereafter appealed from the review division's decision. We now affirm the judgment.

I

Because res judicata or collateral estoppel, when properly raised and established, will preclude a claim or issue, respectively, the defendant's invocation of this principle must first be resolved.[10] We have recently had

---

inaccuracy of such notice of claim be a bar to the maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning such personal injury and was prejudiced by the defect or inaccuracy of such notice. . . ."

[10] The principle that an administrative adjudication may give rise to res judicata or collateral estoppel is well settled. *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care,* 226 Conn. 105, 627 A.2d 1257 (1993); *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance,* 208 Conn. 187, 198, 544 A.2d 604 (1988).

an opportunity to address these two doctrines, their similarities and their differences. *Jackson* v. *R.G. Whipple, Inc.*, 225 Conn. 705, 712–13, 627 A.2d 374 (1993), and cases cited therein. Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. " '[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit.' " *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988), quoting *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 401–402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989).

The case before us raises the question of whether, in the plaintiff's employment termination proceeding, the issue of his alleged misconduct "was actually litigated and necessarily determined . . . ." *Carothers* v. *Capozziello*, 215 Conn. 82, 94–95, 574 A.2d 1268 (1990). "Issue preclusion applies if 'an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment . . . .' 1 Restatement (Second), Judgments § 27 (1982). An issue is 'actually litigated' if it is properly raised in the pleadings, submitted for determination, and in fact determined. Id., § 27, comment d. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually 'have the characteristics of dicta.' Id., § 27, comment h." *Scalzo* v. *Danbury*, 224 Conn. 124, 128–29, 617 A.2d 440 (1992).

Following the termination hearing, the defendant terminated the plaintiff's employment. No appeal from that proceeding was ever taken. The claim of improper termination had thus been litigated and determined.

See *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 511 A.2d 333 (1986). Because, however, neither the transcript of the termination hearing nor the findings by the termination hearing officer were introduced into the record at the workers' compensation hearing, it cannot be determined whether the issue of the plaintiff's misconduct had been "actually litigated," that is, whether it had been properly pleaded, submitted for determination and in fact determined. See 1 Restatement (Second), Judgments § 27, comment d (1982).

Although the issue of the plaintiff's conduct may have been the reason for the hearing, either directly or indirectly,[11] a determination of the alleged misconduct was not essential to the decision by the defendant to terminate the plaintiff's employment. Section 10-151 (d) permits the termination of a tenured school teacher "for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified  . . . ." At no point in the workers' compensation hearing did the defendant offer or submit into evidence the decision from the plaintiff's 1987 termination proceeding. The record before this court regarding the 1987 termination hearing reveals only that the plaintiff was dismissed. The dismissal, therefore, may have been for inefficiency or incompetence, insubordination against reasonable rules or disability as shown by competent medical evidence. In light

---

[11] The record does not disclose whether the plaintiff's alleged misconduct directly prompted the termination proceeding or whether it was the mental stress resulting from the allegations of misconduct and the subsequent publicity that instigated the termination proceeding.

of the medical evidence introduced at the workers' compensation hearing concerning the plaintiff's state of health in 1987, disability could have been a possible reason for termination.

Before collateral estoppel applies there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 297, 596 A.2d 414 (1991). It has not been demonstrated, however, that there was an identified, litigated and decided issue in the 1987 hearing that would have precluded the litigation of the misconduct allegation in 1990. The following colloquy between counsel at the June 1, 1990 hearing demonstrates that the basis of the 1987 decision was not entered into evidence:

"Attorney Rosenblatt: For the record, Commissioner, I would like to add one thing also to my objection; and that is that there's no showing that there was an identity of issues between the hearing that was the subject of [the plaintiff's termination] and this hearing today.

"Attorney Reik: As far as that's concerned, if I might be heard on that briefly. That would be relevant if this was—if the issue here were a claim of collateral estoppel, or a claim of an estoppel effect. We're not claiming that this Commission in any way, form, or manner is stopped by this testimony. We're simply offering the testimony."

Thus, collateral estoppel had not been claimed by the defendant in the evidentiary hearing before the commissioner and was raised for the first time in its brief to the review division. In the absence of a record to support the defendant's assertions that the hearing officer at the termination proceeding concluded that the

plaintiff had inappropriately touched a student and that, as a consequence, he was terminated as a teacher, the commissioner was not precluded from inquiring into the allegations of willful misconduct or from deciding that very issue in the context of the workers' compensation hearing.

## II

We next address the issue of whether the commissioner lacked jurisdiction over the workers' compensation hearing because the plaintiff failed to comply with the time limitations of § 31-294. The defendant argues that the plaintiff's claim satisfied neither the one year statute of limitations for repetitive trauma claims nor the three year statute of limitations for occupational disease claims. More fundamentally, however, the defendant claims that the plaintiff's injury is not compensable at all because it was neither a repetitive trauma nor an occupational disease and did not arise out of or in the course of his employment.

Before addressing the merits of these claims, we briefly turn our attention to the standard of review. Determining whether an injury arose out of and in the course of employment is a question of fact for the commissioner. *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). A decision by a commissioner to grant or deny an award may be appealed to the compensation review division pursuant to General Statutes (Rev. to 1989) § 31-301 (a), which provides in pertinent part: "At any time within ten days after entry of such award by the commissioner . . . either party may appeal therefrom to the compensation review division . . . . Such appeal shall be heard by a panel of the compensation review division . . . . *The compensation review division shall hear the appeal on the record of the hearing before the commissioner,* provided, if it is shown to the satisfaction of the division

that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review division may hear additional evidence or testimony. Upon the final determination of the appeal by the compensation review division . . . it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the compensation review division shall include its findings and award and conclusions of law. . . ." (Emphasis added.) "[T]he review division's hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not 'retry the facts.' . . . '[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' " (Citations omitted.) *Fair* v. *People's Savings Bank,* supra, 538–39. Moreover, the fact that the inference may involve an application of a broad statutory term or phrase to a specific set of facts does not result in any greater scope of judicial review.

"To the extent that we have articulated a standard for reviewing a determination by a commissioner that an injury arose out of the employment, we have treated this issue as factual in nature and, therefore, have accorded the commissioner's conclusion the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause. A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact. . . . This ordinarily and in this case presents a question for the determination of the commissioner and we have no intention of usurping his function. . . .

This rule leads to the conclusion that unless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact." (Citations omitted; internal quotation marks omitted.) Id., 541. The review division is, therefore, bound by the findings of fact made by the commissioner, unless additions, corrections or modifications of findings of fact are made pursuant to the narrow provision set forth in § 31-301 (a).[12]

Section 31-294 imposes a one year limitation for filing "repetitive trauma" claims and a three year limitation for filing "occupational disease" claims. The commissioner concluded that, regardless of whether the plaintiff's mental injury was an occupational disease or the result of repetitive trauma, the plaintiff satisfied both the one year and the three year filing limitations. The defendant argues that, because the plaintiff's injury is the result of "repetitive trauma" and is not an "occupational disease" as defined by General Statutes (Rev. to 1989) § 31-275 (11),[13] the one year limitation is applicable. The defendant further asserts that the plaintiff failed to give notice of his claim within the one year period. According to the defendant, the one year limitation began to run on the plaintiff's claim in June, 1987, when the plaintiff was suspended from his job. The defendant maintains that because the plaintiff was suspended from employment in June, 1987, the plaintiff had to have given timely notice of his claim

---

[12] This provision is not relevant to this case because the review division did not require additional evidence or testimony and none was offered.

[13] General Statutes (Rev. to 1989) § 31-275 (11) provides: " 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment."

by June, 1988. The defendant asserts that, because the plaintiff had not given notice until September 21, 1988, his claim was untimely. We disagree.

In assessing the issue of the timeliness of the plaintiff's claim, we will first inquire into whether the plaintiff has a compensable injury under the Workers' Compensation Act (act) and, if so, whether that injury is an "occupational disease" or the result of "repetitive trauma." The purpose of the act is to compensate employees for injuries "arising out of and in the course of employment," without regard to fault, by imposing a form of strict liability on employers.[14] *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475 A.2d 283 (1984); *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968). Consequently, to recover for an injury under the act, a plaintiff must prove that the injury is causally connected to the employment. To prove causal connection, a plaintiff must demonstrate that the injury claimed (1) "arose out of the employment," and (2) "in the course of the employment." *Bakelaar* v. *West Haven,* supra; *McNamara* v. *Hamden,* 176 Conn. 547, 556, 398 A.2d 1161 (1979). Proof that the injury "arose out of the employment" relates to the time, place and circumstances of the injury. *McNamara* v. *Hamden,* supra, 550. Proof that the injury occurred "in the course of the employment," means that the "injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." *McNamara* v. *Hamden,* supra, 550–51; *Pagani* v. *BT II,*

---

[14] This purpose is extrapolated from General Statutes (Rev. to 1989) § 31-284 (a), which provides in pertinent part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ."

*Limited Partnership,* 24 Conn. App. 739, 745–46, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991).

The commissioner found, and the review division affirmed, that the plaintiff had met both requirements of proof under the two-part test for causal connection. First, the plaintiff's mental injury "arose out of" his employment as a music teacher, in light of the time, place and circumstances of the injury. The plaintiff's mental injury resulted from the mental stress associated with allegations of his sexual misconduct, allegedly occurring during his music lessons at his place of employment, the Harriet Beecher Stowe Elementary School. Because of the causal connection existing between the injury and the employment, we uphold the finding that the injury arose out of the plaintiff's employment.

Second, the commissioner found that the plaintiff's mental injury occurred "in the course of" his employment as a music teacher. The requirements for satisfying this part are threefold. The plaintiff's "injury must [have] occurr[ed:] (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." *McNamara* v. *Hamden,* supra, 550–51.

First, the plaintiff's injury occurred within the period of his employment. Although the plaintiff was suspended in June, 1987, immediately after the allegations were made, he was not terminated until October 21, 1987. During this three month suspension period, while the plaintiff was still employed, several television and radio stations and newspapers reported the allegations. The commissioner found that the plaintiff's injury was the result of mental stress associated with this publicity. Second, the commissioner found that the student, S,

had made damaging allegations against the plaintiff for conduct that she claimed had occurred at the lessons, a place where the plaintiff was supposed to be. Third, because the plaintiff's conduct giving rise to S's accusations occurred while he was giving lessons, the injury occurred while the plaintiff was attempting to fulfill his duties as a music teacher.

The commissioner found that the plaintiff, who was blind in his right eye, had had to lean over S to read her music book during S's clarinet lessons and that he had occasionally and inadvertently touched her either to support himself or to get closer to the music book. Any touching, the commissioner found, had been for instructional purposes or through inadvertence during the music instruction. The accusations made against the plaintiff and the further publication of S's unsubstantiated allegations had had a devastating effect on the plaintiff who then suffered stress, psychological decompensation and eventual breakdown.[15] Accordingly, the commissioner correctly found that the plaintiff's injury arose out of and in the course of his employment.

Having determined that the commissioner correctly concluded that the plaintiff's injury was causally connected to his employment, the review division next addressed whether the injury constituted an "occupational disease" or was the direct result of "repetitive trauma . . . incident to employment." The act defines

---

[15] This case is fundamentally no different from one in which a claimant has been the subject of verbal abuse and sexual advances by a supervisor or coworker. See, e.g., *Breeden* v. *Workmen's Compensation Commissioner*, 168 W. Va. 573, 285 S.E.2d 398 (1981); *Baker* v. *Wendy's of Montana, Inc.*, 687 P.2d 885 (Wyo. 1984). In both cases, the claimants suffered depression and other nervous injuries as a result of such treatment and received workers' compensation benefits. In this case, the plaintiff was exposed to unsubstantiated allegations of sexual misconduct that resulted in publicity and damage to his reputation. This "harassment" arose out of the plaintiff's performance as a teacher and was in the course of his employment.

"injury" to include, "an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined." General Statutes (Rev. to 1989) § 31-275 (8). The plaintiff asserted and the commissioner concluded that the plaintiff's mental injury fell into both the repetitive trauma and occupational disease classifications under the act. The review division ruled similarly. We conclude, however, that the plaintiff's injury is only the result of "repetitive trauma" and not an "occupational disease."

Section 31-275 (11) defines "occupational disease" to include "any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment." In interpreting the phrase "occupational disease," we have stated that "the requirement that the disease be 'peculiar to the occupation' and 'in excess of the ordinary hazards of employment,' refers to those diseases in which there is a causal connection between the duties of the employment and the disease contracted by the employee. In other words, [the disease] need not be unique to the occupation of the employee or to the work place; it need merely be 'so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted." *Hansen* v. *Gordon,* 221 Conn. 29, 35, 602 A.2d 560 (1992). Thus, an occupational disease "does not include a disease which results from the peculiar conditions surrounding the employment of the claimant in a kind of work which would not from its nature be more likely to cause it than would other kinds

of employment carried on under the same conditions." *Madeo* v. *I. Dibner & Bro., Inc.,* 121 Conn. 664, 667, 186 A. 616 (1936).

Application of these principles to the facts of this case reveals that the plaintiff did not suffer from an occupational disease. The plaintiff's mental injury is not so distinctively associated with his occupation as music teacher that there is a direct causal connection between his occupational duties and his mental injury. The plaintiff's mental injury resulted from mental stress associated with allegations of his sexual misconduct. Such allegations of sexual misconduct could arise in numerous occupational settings. Therefore, the occupation of music teacher is not by its nature more likely to give rise to allegations of sexual misconduct than would other kinds of employment carried on under similar conditions. Consequently, the commissioner incorrectly concluded that the plaintiff's mental injury constituted an occupational disease.

We conclude, however, that the commissioner reasonably found and the review division properly affirmed that the plaintiff's injury was the direct result of repetitive trauma incident to his occupation as music teacher. The commissioner found that the plaintiff had been the victim of repeated exposure to negative publicity between June, 1987, and October, 1987. In light of these findings, the commissioner reasonably concluded that the plaintiff's mental injury was the direct result of exposure to the repeated trauma of allegations of sexual misconduct during the plaintiff's employment.

Thus, the one year filing limitation under § 31-294 was properly applied to the plaintiff's claim. The commissioner concluded that the plaintiff had satisfied this applicable limit because he had filed his claim in September, 1988, within one year of his actual termination in October, 1987. The review division upheld the

commissioner's determination, noting that, in repetitive trauma cases, it is settled law that the date of injury is the last day of exposure to the work related incidents of repetitive trauma, or the last day worked, whichever is later. See, e.g., *Borent* v. *Connecticut,* 10 Conn. Workers' Comp. Rev. Op. 219, 1302 CRD-2-91-9 (1991); *Carvalko* v. *Bassick Co.,* 9 Conn. Workers' Comp. Rev. Op. 258, 767 CRD-4-88-9 (1991); *Pich* v. *Pratt & Whitney,* 4 Conn. Workers' Comp. Rev. Op. 163, 354 CRD-6-84 (1988).

We accord great deference to the construction given to § 31-294 by the commissioner and the review division because they are both charged with its enforcement. *Police Department* v. *State Board of Labor Relations,* 225 Conn. 297, 300, 602 A.2d 1005 (1993); *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 119–20, 584 A.2d 1172 (1991). Thus, we conclude that the commissioner correctly relied on the plaintiff's last day of employment in determining that he had satisfied the one year filing limitation. Although the plaintiff was suspended in June, 1987, the commissioner found that he had remained employed by the defendant and had continued to receive a full salary until he was terminated on October 21, 1987. Accordingly, the plaintiff's last day of exposure to work-related publicity was October 21. The plaintiff filed notice of his repetitive trauma claim on September 22, 1988. Therefore, the commissioner correctly concluded that the plaintiff's repetitive trauma claim, filed within one year of his last day of exposure, had been timely filed.

### III

We next address the issue of whether the plaintiff's mental injuries were compensable under § 31-294. The defendant argues that the injuries were not compensable because: (1) a mental injury resulting from a deviation from employment or willful and serious mis-

conduct is not compensable; (2) a mental injury resulting from termination is not compensable; and (3) a mental injury unaccompanied by a physical component is not compensable.

A

Bound by the findings of fact made by the commissioner, the review division correctly adopted the commissioner's findings that the plaintiff's injury had occurred in the course of his employment, not from his termination and not from any willful or serious misconduct. On the basis of four days of testimony and exhibits, the commissioner found that the plaintiff had not touched S in any sexual or abusive manner and that any touching by him was for instructional purposes or through inadvertence during the music instruction.[16] The defendant does not argue that these findings were unreasonable or that they were unsupported by the evidence. Rather, the defendant contends that the commissioner incorrectly precluded the introduction of testimony given on August 14, 1987, by another of the plaintiff's female students that, it maintains, might have caused the commissioner to find differently.[17] We do not agree.

---

[16] Specifically, the commissioner made the following findings: "43. Claimant did not touch [S] in any sexual or abusive manner. Any touching of [S] by the Claimant was for instructional purposes or through inadvertence during the music instruction. . . .

"45. No credible evidence was presented at the hearing that Claimant touched any student in a sexual or abusive manner, or for any reason other than instructional purposes. . . .

"56. Dr. Swords opined concerning Claimant, that from his perspective as Claimant's treating physician, he found no evidence of antisocial behavior or any evidence of a sexual disorder, perversion, misconduct, or indiscretion. I adopt Dr. Swords's opinion as part of my finding. . . .

"61. No credible evidence was presented at the hearing to support Respondents' contentions of serious and wilful misconduct on Claimant's part."

[17] The defendant also argues that the commissioner was precluded from making these findings because the termination hearing pursuant to General Statutes § 10-151 acted as a prior decision within the rule of collateral estoppel. In this regard, we have already concluded otherwise. See part I, supra.

The defendant had the burden of proving any allegation of willful and serious misconduct. *Liptak* v. *State*, 176 Conn. 320, 322, 407 A.2d 980 (1978). In its attempt to do so, the defendant offered testimony of several student witnesses, and a deposition testimony of Walter Borden, a psychiatrist, and conducted extensive cross-examination of the plaintiff. The only thing that the defendant was precluded from doing was introducing the transcript of testimony of a former student given at the termination hearing held in 1987 pursuant to General Statutes § 10-151. The commissioner sustained the plaintiff's objection to the transcript because the defendant had not demonstrated a sufficient showing of the witness' unavailability.

At the June 1, 1990 hearing, the director of pupil services with the Enfield public schools, Robert F. Griffin, testified to the unavailability of this former student of the plaintiff who had testified at the 1987 termination hearing. Griffin stated that his "search" for the former student had consisted of two telephone calls to two unidentified secretaries at schools outside this state. In sustaining the commissioner's decision to preclude the transcript of this other student's testimony, the review division remarked: "That hardly satisfies the requirements of our case law. Certainly there was not sufficient compliance to cause us to rule that the commissioner's exclusion of the evidence was error." We agree with the review division's assessment.

A requirement for the use of former testimony is the present unavailability of the witness whose testimony is sought and the burden to demonstrate the witness' unavailability rests with the party seeking to offer the former testimony. *State* v. *Aillon*, 202 Conn. 385, 391, 521 A.2d 555 (1987). "Due diligence to procure the attendance of the absent witness is an essential predicate to unavailability." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.4.2, p. 326. Griffin

testified that the witness had moved to New Hampshire. He did not, however, do anything further to determine her availability. A witness residing in another state is not unavailable for that reason alone. *State* v. *Leecan,* 198 Conn. 517, 540, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). The record does not indicate whether the jurisdiction in which the witness allegedly resides has a statute or common law process relating to attendance of witnesses in other states.[18] See *Barber* v. *Page,* 390 U.S. 719, 723 n.4, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968), and accompanying text; *State* v. *Weinrib,* 140 Conn. 247, 251, 99 A.2d 145 (1953). The commissioner, therefore, did not abuse his discretion in disallowing the transcript into evidence. Moreover, the commissioner gave the defendant more than one opportunity to produce the witness or sufficiently to show her unavailability. The defendant did not attempt to do so either on the day the issue initially surfaced or on the next hearing date one week later.

The commissioner, therefore, was well within the proper exercise of his discretion in concluding from all the evidence properly before him that the plaintiff had not engaged in any willful and serious misconduct, and the review division was bound to accept those findings.

### B

The commissioner also concluded that the plaintiff's injury was not sustained as a result of his termination,[19]

---

[18] The burden of proving unavailability is even greater in criminal cases than in civil cases because the defendant in a criminal case has a constitutional right to confront the witnesses against him. Conn. Const., art. I, § 8. We do not, however, discuss the shades of differences in this case in light of the minimal record advanced by the defendant to demonstrate unavailability.

[19] See *Fulco* v. *Norwich Roman Catholic Diocesan Corporation,* 27 Conn. App. 800, 609 A.2d 1034 (1992) (emotional distress caused by the manner of an employee's discharge is not a work-related injury; therefore, a com-

but rather arose out of his employment. The commissioner found that: the plaintiff had been suspended from his job of twenty years as a result of accusations made against him in June, 1987; various newspapers and television reports of these accusations had portrayed the plaintiff in a very negative light; these accusations had caused the plaintiff to suffer stress, anger, resentment, humiliation and loss of self-esteem; as a result of this stress and other emotional effects that emanated primarily from the accusations made against him and that arose out of and in the course of his employment, the plaintiff had undergone psychological decompensation that began at the time of the accusations made against him in June, 1987, and had resulted in a psychotic breakdown on December 25, 1987; these accusations in June 1987, had been the beginning of a continuum of psychological decompensation that did not fully impact on the plaintiff until on or about the time of his termination in October, 1987, and resulted in his psychiatric breakdown on December 25, 1987; and the attendant publicity had substantially and materially contributed to the breakdown the plaintiff suffered on December 25, 1987.

We conclude that the commissioner's finding that the origins of the plaintiff's injury arose out of his employment, although much of his incapacity did not occur until later, was firmly rooted in evidence and directly contradicts the defendant's claim that the plaintiff's injury arose not out of his employment but out of his termination. Accordingly, the defendant has not met its burden of demonstrating that the commissioner

mon law cause of action for negligent infliction of emotional distress is not barred by General Statutes § 31-284 [a], the exclusivity provision of the Workers' Compensation Act). The defendant appealed to this court and we dismissed the appeal on the ground that certification had been improvidently granted. *Fulco* v. *Norwich Roman Catholic Diocesan Corporation,* 226 Conn. 404, 627 A.2d 931 (1993).

abused his discretion in making these findings and that the review division improperly sustained them.

## C

In its last claim, the defendant challenges the commissioner's conclusion that a mental injury unaccompanied by a physical component is compensable under § 31-294, and argues, instead, that the physical component is essential. We are not persuaded.

Section 31-294 states that "[a]ny employee who has sustained an injury in the course of his employment" may make a claim for workers' compensation benefits. "Injury" is defined in § 31-275 (8) as "an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined." Section 31-275 uses the term "injury" without limitation, and there is nothing in the statute to suggest the proposed limitation. The defendant can point to no case, nor can we find one, that has interpreted the statute to include such a limitation. This court has never hypothesized that mental injury alone could not be the subject of compensation provided that it is causally connected to the employee's work. Moreover, decisions by the review division, the agency entrusted with interpreting and enforcing the act; *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 263, 579 A.2d 505 (1990); hold to the contrary. See *Henderson* v. *Brink's, Inc.,* 5 Conn. Workers' Comp. Rev. Op. 115, 466 CRD-4-86 (1988); *Zipoli* v. *Watertown,* 3 Conn. Workers' Comp. Rev. Op. 23, 215 CRD-5-83 (1986).

"The injuries compensated by the Act are not only those for which an action lay under the common law, but all injuries 'arising out of and in the course of' the employment of the injured." *Miller* v. *American Steel & Wire Co.,* 90 Conn. 349, 375, 97 A. 345 (1916).

"Injury," as stated throughout the act is not defined exclusively as physical injury. "Neither are the words 'incapacity' or 'disability' when used in the statute confined exclusively to somatic conditions." *Henderson* v. *Brink's, Inc.,* supra, 116. The absence of such limiting language in the rest of the statute, in contrast to the inclusion of such limiting language in General Statutes (Rev. to 1989) § 31-349,[20] precluding liability under that section from being transferred if the previous impairment is mental or emotional, reflects the legislative intent. "[I]n reliance on the classic inclusio unius [est] exclusio alterius argument, (we conclude) that had the legislature wished to restrict compensable incapacity only to those occasions when some physical element was involved, it would have included in other chapter 568 sections similar restrictive language to that used in § 31-349." Id.

In his treatise, Professor Larson discusses three categories of cases that address the various mental, nervous and stress conditions for which workers' compensation claims are routinely made: "mental stimulus causing physical injury; physical trauma causing nervous injury; and mental stimulus causing nervous injury ['mental-mental' cases]." 1B A. Larson, The Law of Workmens' Compensation (1992) § 42.20, p. 7-813. We have found compensability in the first two groups. *McDonough* v. *Connecticut Bank & Trust Co.,* 204 Conn. 104, 527 A.2d 664 (1987); *Sgritta* v. *Hertz Construction Co.,* 124 Conn. 6, 197 A. 754 (1938); see *Donato* v. *Pantry Pride,* 37 Conn. Sup. 836, 438 A.2d 1218 (1981). In *Wilder* v. *Russell Library Co.,* 107 Conn. 56, 60–61, 139 A. 644 (1927), this court upheld an award for the "worry, anxiety and excessive ner-

---

[20] General Statutes (Rev. to 1989) § 31-349 (a) provides in pertinent part: "The fact that an employee has suffered previous disability . . . total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment . . . . ."

vous and mental activity in connection with the library work [that] were all contributing factors in the ultimate mental breakdown."

There is a growing majority position among other jurisdictions supporting compensability in Larson's third category. *Johnson* v. *Delchamps, Inc.,* 715 F. Sup. 1345, 1346 (M.D. La. 1989), aff'd, 897 F.2d 808 (5th Cir. 1990); *Cooper* v. *Workers' Compensation Appeals Board,* 173 Cal. App. 3d 44, 49, 218 Cal. Rptr. 783 (1985); *Los Angeles* v. *Workers' Compensation Appeals Board,* 119 Cal. App. 3d 355, 363, 174 Cal. Rptr. 25 (1981); *Stuart* v. *Frederick R. Ross Investment Co.,* 773 P.2d 1107 (Colo. App. 1988); *Aurora* v. *Industrial Commission,* 710 P.2d 1122 (Colo. App. 1985); *O'Loughlin* v. *Circle A Construction,* 112 Idaho 1048, 739 P.2d 347 (1987); *Hansen* v. *Von Duprin, Inc.,* 496 N.E.2d 1348 (1986), rev'd on other grounds, 507 N.E.2d 573 (Ind. 1987); *Yocom* v. *Pierce,* 534 S.W.2d 796 (Ky. 1976); *Jones* v. *New Orleans,* 514 So. 2d 611 (La. App. 1987); *Carter* v. *General Motors Corporation,* 361 Mich. 577, 586–91, 106 N.W.2d 105 (1960); *Simon* v. *R.H.H. Steel Laundry, Inc.,* 25 N.J. Super. 50, 95 A.2d 446, aff'd, 26 N.J. Super. 598, 98 A.2d 604 (1953); *Candelaria* v. *General Electric Co.,* 105 N.M. 167, 730 P.2d 470 (1986); *Martinez* v. *University of California,* 93 N.M. 455, 601 P.2d 425 (1979); *Brown* v. *Alos Micrographics Corporation,* 150 App. Div. 2d 888, 540 N.Y.S.2d 911 (1989); *Haydel* v. *Sears, Roebuck & Co.,* 106 App. Div. 2d 759, 483 N.Y.S.2d 792 (1984); *McGarrah* v. *State Accident Ins. Fund,* 59 Or. App. 448, 651 P.2d 153, aff'd, 296 Or. 145, 675 P.2d 159 (1983); *Breeden* v. *Workmen's Compensation Commissioner,* 168 W. Va. 573, 285 S.E.2d 398 (1981); *Baker* v. *Wendy's of Montana, Inc.,* 687 P.2d 885 (Wyo. 1984); *Consolidated Freightways* v. *Drake,* 678 P.2d 874 (Wyo. 1984).[21] In

---

[21] Among those states providing compensation for "mental-mental" cases, there is a wide range of issues, including, but not limited to, whether the

fact, only "eight states have expressly ruled out liability in any kind of mental-mental case." 1B A. Larson, supra, § 42.25 (d), p. 7-963.

Finally, recent developments in tort law also reflect a broadening of the definition of a compensable injury to include emotional distress. In *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 344, 398 A.2d 1180 (1978), we stated that "there is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only." Similarly, then Judge Borden stated in *Buckley* v. *Lovallo*, 2 Conn. App. 579, 589, 481 A.2d 1286 (1984), "[w]e see no reason to subject a claim of mental suffering, which is ordinarily evidenced by subjective complaints, to stricter scrutiny or greater care than a claim of physical suffering evidenced by the same type of complaints. Medical science has unquestionably become sophisticated enough to provide reliable and accurate evidence on the causes of mental trauma. . . . Medical science and mental health fields have advanced sufficiently to enable a trier of fact to determine the extent of mental suffering by the same standard of proof as physical suffering. . . . A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence, unfettered by any additionally exacting gauge." (Citations omitted; internal quotation marks omitted.) See *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986); *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). This line of authority is persuasive because it recognizes that " '[t]he human body consists of bone, flesh, ligaments, and nerves controlled by the brain . . .' and that 'the fact that the stimulus is gradual,

stimulus was sudden or gradual. This question has not been raised by the defendant and is therefore left for another day.

in the form of sustained tension, worry, strain, frustration, or harassment, does not, in the opinion of the majority of the Courts that have dealt with the question, make nervous injury any less compensable than if it were caused by sudden shock.' " (Citations omitted.) *Battista* v. *Chrysler Corporation,* 517 A.2d 295, 297 (Del. Super. 1986).

Accordingly, we hold that mental disorders, even if not accompanied by physical trauma to the body, constitute an injury under the act. To hold otherwise would be to create an artificial distinction.

The judgment is affirmed.

In this opinion the other justices concurred.