[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON INTERVENING PLAINTIFF'S MOTION FOR APPORTIONMENT AND REIMBURSEMENT
On or about June 3, 1987, Victor and Deborah LaValla of Enfield complained to the Enfield Board of Education ("Board") that plaintiff Roderick Crochiere, then a full-time Enfield teacher, had sexually abused their fifth-grade daughter Heather in the course of a clarinet lesson at her school. Two days later, the Board suspended the plaintiff from his job and initiated termination proceedings against him.
In the termination proceedings, the plaintiff was represented by Attorney Ronald Cordilico, who had been recruited for that purpose by the Enfield Teachers Association ("ETA") and the Connecticut Education Association ("CEA"), professional organizations to which the plaintiff then belonged. On October 21, 1987, these proceedings culminated in the termination of the CT Page 10526 plaintiff's employment.
Before the plaintiff's job was terminated, he filed a Workers' Compensation claim against the Board, claiming that as a result of the LaVallas' allegation and of his resulting need to defend himself against that allegation, he had suffered and would continue to suffer severe mental distress. After nearly six years of litigation, that claim was finally resolved in the plaintiff's favor by the August 24, 1993 decision of the Connecticut Supreme Court in Crochiere v. Board of Education, 227 Conn. 333 (1993). As a result of that decision and of the June 28, 1990 ruling it upheld, the Board has paid the plaintiff $35,508.66 in Workers' Compensation benefits.
On May 12, 1989, nearly two years after the LaVallas first accused him of sexual misconduct but more than one year before the initial favorable ruling on his Workers' Compensation claim, the plaintiff commenced this action against Victor, Deborah and Heather LaValla ("the LaVallas"), the ETA, the CEA, Attorney Cordilico and the Board. The first six counts of his Complaint were directed against the LaVallas, accusing them of defamation, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress and intentional interference with contractual relations, all in relation to the June 1987 claim of misconduct which led to his termination. The seventh count was a claim that the CEA and ETA, both union entities, had breached their respective duties to provide him with fair representation in his termination proceedings. The eighth count was a claim of legal malpractice against Attorney Cordilico, based on the representation he gave the plaintiff in the termination proceedings. The ninth and final count was a claim against the Board, alleging that it had unjustly discharged him, without due process, in derogation of his rights under the collective bargaining agreement, theFourteenth Amendment to the United States Constitution, and controlling Connecticut statutes. This final count was dismissed by this Court, Hale, J. presiding, on February 6, 1990.
On April 27, 1990, the Board moved this Court under 31-293 of the Connecticut General Statutes for permission to reenter this case as an intervening plaintiff, so that it could later recoup any Workers' Compensation benefits it might ultimately be ordered to pay the plaintiff from any damages he might recover in this case. Though this motion was originally opposed by the plaintiff and denied by the Court on the ground that it was premature, it was later renewed by the Board, and ultimately granted by the Court, CT Page 10527 Maloney, J. presiding, on September 28, 1993.
At or near the time when the Board's motion to intervene was finally granted[1], plaintiff Crochiere formally withdrew all of his pending claims against each of the remaining defendants under the undisclosed terms of confidential settlement agreements which he and the defendants negotiated, without input from or approval by the Board. Against this background, the Board has moved this Court to enter an order requiring the apportionment, between itself and plaintiff Crochiere, of all monies Crochiere expects to receive from the defendants in settlement of this case. It asks, more particularly, for reimbursement from the proceeds of the plaintiff's settlement for all Workers' Compensation benefits it paid him as a result of the injuries for which compensation was ordered in Crochiere v. Board of Education, supra.
In support of its claim for apportionment and reimbursement, the Board relies principally upon the language of 31-293, which at all times relevant to this lawsuit provided in pertinent part as follows:
 (a) When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a third person other than the employer a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against the third person, but the injured employee may proceed at law against the third person to recover damages for the injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against the third person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If either the employee or the employer brings an action against the third person, he shall immediately notify the other, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the other may join as a party plaintiff in the action within thirty days after such notification, and, if the other fails to join as a party plaintiff, his right of action against the third person shall abate. In any CT Page 10528 case in which an employee brings an action against a third party in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys fees, incurred by the employee in effecting the recovery. The rendition of judgment in favor of the employee or the employer against the third party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the third person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury.
Reduced to its essence, the Board's claim under this statute is as follows: By intervening in this lawsuit, the Board became entitled to apportionment of "any damages . . . recovered" in the lawsuit for injuries as to which it had already paid the plaintiff Workers' Compensation benefits. Because the legal claims here presented sought damages for the very same stress-related injuries for which the Board has already paid the plaintiff Workers' Compensation benefits, the financial proceeds of any settlement agreement under which the plaintiff agreed to withdraw those claims must be treated as a recovery of damages for those injuries, and should therefore CT Page 10529 be apportioned between the plaintiff and the Board. If apportionment is not ordered, the Board concludes, the plaintiff will unjustifiably be afforded precisely what 31-293 forbids: a double recovery for an injury he suffered only once.
To this argument, the plaintiff responds, inter alia[2], that the Board's claim for apportionment must fail because it has not satisfied an essential statutory precondition to the recovery of damages against any defendant with whom he has negotiated a settlement. In the first sentence of 31-293(a), he reminds the Court, the legal right of employees and employers to recover damages for compensable injuries from alleged third-party tortfeasors is expressly limited as follows:
 (a) When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a third person other than the employer a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against the third person, but the injured employee may proceed at law against the third person to recover damages for the injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against the third person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee.
This provision, he argues, requires any employer who wishes to recover damages from a third person whom the employer claims to have injured its employee, to first establish that the employee's injury was sustained "under circumstances creating in [the] third person a legal liability to pay damages for the injury." Id.
In this case, the plaintiff contends, his settlements with the defendants are not based, either explicitly or by necessary implication, on any defendant's admission of legal liability to pay damages for the injuries here complained of. Rather, each settlement agreement is a legal contract by which he bound himself not to pursue such claims of legal liability in exchange for certain monetary payments and other unspecified consideration. On that basis, the plaintiff argues that any monies he expects to receive under the terms of his settlement agreements cannot be CT Page 10530 apportioned between him and the Board, for in no sense are they "damages . . . recovered" for any injury shown to have been "sustained under circumstances creating in [any of the defendants] a legal liability to pay [him] damages [therefor]." CGS 31-293(a).
So presented, the plaintiff's opposition to the Board's apportionment claim is well supported both by logic and by legal precedent. First, as the plaintiff cogently argues, the plain language of 31-293 clearly establishes that before a third person may be forced to pay an employer damages for any injury to an employee for which it has already paid Workers' Compensation benefits, the employer must prove that the injury in question was "sustained under circumstances creating in [the] third person a legal liability to pay damages for th[at] injury." Though a third person sued for such damages may voluntarily agree to pay the employer money to settle the claims against him, he cannot be forced to do so until his legal liability to pay damages has been established.
Second, in our crowded court system it would be senseless to treat settlement agreements as de facto admissions of legal liability, for such a practice would discourage settlements and further clog our busy dockets. It would violate, moreover, the freedom of litigants to end their legal disputes by entering into binding contracts that fairly resolve the issues between them in manner that satisfies them both. If courts were authorized to read unintended, undesired conditions into the parties' settlement agreements, the parties would never enter into such agreements for fear that their legitimate expectations would not be met.
Third, our Supreme Court has long held that the proceeds of settlements are not subject to apportionment under 31-293. In United States Fidelity Guaranty Company v. New York, New Haven Hartford Railway Company, 101 Conn. 200 (1924), the Court had before it a case in which, after seeking and receiving compensation from his employer under the predecessor to 31-293, the injured employee privately settled his claim against the defendant railroad, which had injured him, without the knowledge or agreement of his employer. When the employer learned of this settlement, it promptly sued the defendant railroad to recover the benefits it had paid to the employee to compensate him for that injury, claiming that it, like the Board in this case, was entitled to reimbursement from the proceeds of the employee's private settlement. To this claim, the Court responded as follows: CT Page 10531
 Action by the employer against the defendant railroad, by express provision of this statute, will only lie in a case "when any injury for which compensation is payable . . . shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto." By necessary implication this statute gives a right of action to employee and to employer against defendant railroad for injuries legally caused by it, and denies such action when the defendant did not legally cause the injuries . . . . Defendant's settlement with the employee cannot be taken as an acknowledgment by it of its legal liability. The law favors a settlement of disputes; a defendant might be ready to pay a substantial sum rather than to litigate his liability. The mere fact that the defendant has secured a release by the employee from liability for injuries to him, or paid him damages, is not an adjudication of the legal liability of the defendant, nor even evidence of legal liability. The statute itself makes the legal liability of this defendant a condition precedent to its obligation to pay damages. . . . If an action could be sustained against the defendant as a tort-feasor, under the circumstances of this case, it would be maintained without the defendant having an opportunity to have had its legal liability for the injuries to the employee of the employer determined by a legal adjudication. The defendant would thus pay damages and lose its property without having had the right to be heard upon the question of its legal liability. This could not be done.
Id. at 204-205, 207. Concluding, on that basis, that there was no good reason to relieve the employer of its "statutory obligation of proving the defendant's legal liability for the employee's injuries," id., the Court ruled that the employer had "no right to the fund paid this employee by the defendant by way of settlement until it . . . established defendant's legal liability for the employee's injuries." Id. at 207-208.
The precedent set in U.S. FG v. N.Y., N.H. H.R. Co., supra, remains good law to this day. See, e.g., Snagg v. Eastman,7 CTLR 172, 173 (July 28, 1992, Melville, J.) and Valley Forge Insurance Company v. Terribile, 1992 WL 405323 (1992) (Langenbach, J.) Because it expressly preconditions any employer's recovery of compensation benefits from an alleged third-party tortfeasor on CT Page 10532 proof of the third party's legal liability for the compensable injuries, and flatly holds that the mere settlement of an employee's claim against the third party, with or without the payment of damages, does not establish such liability, the Enfield Board of Education's instant motion for apportionment and reimbursement must obviously be denied.
If the result of such denial is to permit the plaintiff a double recovery, it must finally be observed that the Board itself will not be harmed by that result. Rather, since the Board retains the independent right to pursue its claim for relief against each of the defendants who has settled with plaintiff Crochiere, the only parties who may suffer from those settlements are the defendants, if and to the extent they are ultimately required to pay the Board for injuries as to which they have already paid Crochiere. Because, however, the defendants must be understood to have reached their settlements with Crochiere with a full awareness of their continuing liability to the Board, the Court will not second-guess their assessment of the relevant risks by upsetting their agreements with Crochiere to protect them from making double payments.
For all of the foregoing reasons, the Board's motion for apportionment and reimbursement is denied without prejudice to the Board's continuing right to pursue its independent claim for damages as the only remaining plaintiff in this lawsuit.
McGann, Bartlett Brown for moving plaintiff.
Gould, Killian Wynne for defendants.