JOHN MULDOON *v.* HOMESTEAD INSULATION
COMPANY ET AL.
(14927)

PETERS, C. J., AND BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued October 25—decision released December 13, 1994

*Robert F. Carter,* for the appellant (plaintiff).

*Karen P. Blado,* with whom were *Mary J. Ambrogio* and, on the brief, *Cori-Lynn S. Webber,* for the appellees (defendant Cummings Insulation Company et al.).

KATZ, J. The issue in this certified appeal is whether the Appellate Court[1] properly concluded that the com-

---

[1] Appeals from decisions of the compensation review board are authorized by General Statutes § 31-301b, which provides: "APPEAL OF DECI-

pensation review board[2] of the workers' compensation commission had improperly affirmed the decision of the workers' compensation commissioner for the fourth district ordering the defendant CNA Insurance Company to pay benefits and all reasonable and necessary medical expenses to the plaintiff, John Muldoon, pursuant to General Statutes § 31-299b.[3] The Appellate Court concluded that because the commissioner had found that the claimed injury was an increase in a preexisting disability and not a new injury, the board should have concluded that the claim was barred by a prior stipulation. Because we disagree with the Appellate Court's interpretation of the findings of fact by the commissioner, we reverse the judgment.

The following facts are undisputed. From 1947 to 1974, Muldoon had been employed by various employ-

SION OF COMPENSATION REVIEW BOARD. Any party aggrieved by the decision of the compensation review board upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review board to the appellate court."

[2] At the time of trial, the compensation review board of the workers' compensation commission was called the compensation review division. The name was changed by No. 91-339 of the 1991 Public Acts and we will refer to the division as the board throughout this opinion.

[3] General Statutes § 31-299b provides in pertinent part: "INITIAL LIABILITY OF LAST EMPLOYER. REIMBURSEMENT. If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within ten days, the order shall be final and may be enforced in the same manner as a judgment of the superior court."

ers as an asbestos insulation worker. In 1975, he was diagnosed as having pulmonary asbestosis, a restrictive lung condition caused by the scarring of lung tissue by the asbestos fibers to which he had been exposed. Muldoon filed a claim under the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; for the pulmonary asbestosis based upon his exposure to asbestos during the course of his employment from 1947 to 1974. His lung condition, based on this exposure, was found to be a 50 percent permanent partial disability. Muldoon settled this claim for $19,500 by stipulation approved on March 31, 1977. Two of the defendants in the present case, Cummings Insulation Company (Cummings) and New England Insulation were among the twenty-two employers who were parties to the stipulation.[4] The parties agreed that payments were "in full accord and satisfaction of a disputed claim" and "shall be made and accepted as a full and final settlement for all compensation for said injury and for all results upon [Muldoon], past, present and future, and for all claims for past, present and future medical, surgical, hospital and incidental expenses and all compensation which may be due to anyone in case of the death of [Muldoon], to the end that the payment of such sum shall constitute a complete satisfaction of

[4] The defendants in the workers' compensation action at issue here included Homestead Insulation Company, Liberty Mutual Insurance Company, C.N. Flagg and Company, Kemper Insurance Group, Crouse Nuclear Energy Services, Inc., Zurich-American Insurance Company, Home Insurance Company, American Guarantee and Liability Insurance Company, Cummings Insulation Company and CNA Insurance Company. Two separate appeals were filed in the Appellate Court. The cases were consolidated and the judgment rendered was dispositive of both appeals. *Muldoon* v. *Homestead Insulation Co.*, 33 Conn. App. 695, 696 n.1, 638 A.2d 41 (1994). Muldoon filed a single petition for certification from that judgment. That petition was granted. *Muldoon* v. *Homestead Insulation Co.*, 229 Conn. 915, 642 A.2d 1209 (1994). The brief filed in this court by Cummings Insulation Company and CNA Insurance Company was adopted by Homestead Insulation Company, C.N. Flagg and Company and Crouse Nuclear Energy Services, Inc.

all claims due or to become due at any time in favor of anybody on account of the claimed injury, or on account of any condition in any way resulting out of the said injury, or on account of the death of [Muldoon] on account of said condition." The settlement further stated that Muldoon understood the agreement to be a "full and final settlement and that it is intended to deal with any and all conditions, known or unknown, which exist as of the date thereof, or any changes of conditions which may arise in the future on account of said alleged occupational disease occurring between 1947 and 1974."

Muldoon remained in asbestos related employment from 1975 through 1984 with Cummings, Wallingford Insulation, Crouse Nuclear Energy Services, Inc., and C.F. Hogge and Company. In 1987, he filed a workers' compensation claim based on a substantial increase in his pulmonary disability that he claimed had been caused by this additional significant exposure to asbestos. The commissioner found that Muldoon's "continued exposure to asbestos from 1975 through 1984 was a substantial causal factor in the material worsening of this pulmonary condition from 50 percent to 75 percent disability; and this deteriorated condition of [Muldoon's] respiratory system was a substantial causal factor in [Muldoon's] total disability from July 1, 1986, through the present." The commissioner further found "that [Muldoon] developed a substantial increase in his pulmonary disability from his exposure to asbestos from 1975 through 1984." On the basis of these findings, the commissioner ordered the defendants to pay Muldoon benefits at the rate of $397 per week pursuant to General Statutes § 31-299b.[5]

[5] In 1986, Muldoon filed a separate claim for benefits for intestinal cancer arising out of the asbestos exposure from 1947 to 1984. The two claims were consolidated by agreement of the parties. The commissioner found that Muldoon suffered from colon cancer in 1986, but the commissioner

The defendants appealed from that decision to the board, claiming that: (1) Cummings was not Muldoon's last employer pursuant to § 31-299b; (2) Muldoon's continued work with asbestos after 1975 and his smoking habits constituted serious and wilful misconduct that rendered him ineligible for workers' compensation benefits; and (3) Muldoon's benefit claim was barred by the stipulation approved on March 31, 1977.

The board affirmed the commissioner's finding and award, holding that: (1) there was ample evidence to support the commissioner's findings that Muldoon's employment at Cummings in 1984 was his last known exposure to asbestos and that any post-1984 exposure was merely speculative; (2) the commissioner's finding that Muldoon's continued work with asbestos following 1974 did not constitute wilful and serious misconduct was supported by evidence and the law; and (3) Muldoon's settlement of his claim regarding his lung damage incurred between 1947 and 1974 did not bar his claim for disability benefits based upon his additional injury from contact with asbestos between 1975 and 1984.

The defendants filed two appeals to the Appellate Court raising virtually these same claims. The Appellate Court first determined that the board had improperly substituted its finding that the disability resulted from a new injury for the commissioner's finding that the disability was only a substantial increase resulting from the old injury. The Appellate Court then concluded that the board's decision to grant an award was legally incorrect because the 1977 stipulation barred future recovery for disability stemming from the old injury. Accordingly, the Appellate Court reversed the decision

made no specific finding that the asbestos exposure caused the cancer. Because the commissioner simultaneously found Muldoon to be totally disabled from his pulmonary condition and awarded temporary total disability benefits on that basis, Muldoon never pursued the colon cancer claim.

of the board and ordered the case remanded with direction to sustain the defendants' appeals. *Muldoon* v. *Homestead Insulation Co.,* 33 Conn. App. 695, 701, 638 A.2d 41 (1994).

We granted certification on the issue of whether the Appellate Court properly concluded that Muldoon's claim had been barred by the prior stipulation as a matter of law. *Muldoon* v. *Homestead Insulation Co.,* 229 Conn. 915, 642 A.2d 1209 (1994). We reverse.[6]

Our scope of review on appeal is well established. "A decision by a commissioner to grant or deny an award may be appealed to the compensation review division pursuant to General Statutes (Rev. to 1989) § 31-301 (a), which provides in pertinent part: At any time within ten days after entry of such award by the commissioner . . . either party may appeal therefrom to the compensation review division. . . . Such appeal shall be heard by a panel of the compensation review division . . . . *The compensation review division shall hear the appeal on the record of the hearing before the commissioner,* provided, if it is shown to the satisfaction of the division that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review division may hear additional evidence or testimony. Upon the final determination of the appeal by the compensation review division . . . it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the compensation review division shall include its findings and award and conclusions of law. . . . (Emphasis added.) [T]he review division's hearing of an appeal from the commissioner is not a

---

[6] The defendants raised three other claims that the Appellate Court was not required to address in light of its decision. Because we reverse the judgment of the Appellate Court, these issues are proper for consideration upon our remand.

de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; internal quotation marks omitted.) *Crochiere* v. *Board of Education,* 227 Conn. 333, 346–47, 630 A.2d 1027 (1993).[7]

Whether the ten years of asbestos exposure from 1975 through 1984, the period following that covered by the 1977 stipulation, was a cause of the substantial increase in Muldoon's preexisting disability is a question of fact. See *Janov* v. *General Electric Co.,* 4 Conn. Workers' Comp. Rev. Op. 44 (1987). Similarly, the issue of whether a disability arose out of an old injury is factual in nature. Findings regarding the cause and effect of successive injuries may not be disturbed on appeal unless reached without evidence. See *Mund* v. *Farmers' Cooperative, Inc.,* 139 Conn. 338, 342, 94 A.2d 19 (1953). According to Professor Larson: "Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony, or, in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony, will not be disturbed on appeal." 1 A. Larson,

---

[7] The board is therefore bound by those findings of fact unless additions, corrections or modifications are made pursuant to the narrow provision set forth in § 31-301 (a). *Crochiere* v. *Board of Education,* supra, 227 Conn. 348. Because no additional evidence was offered, this provision is not relevant to the case.

Workmen's Compensation (1993) § 12.25, pp. 3-475–3-476. The commissioner's conclusions are accorded "the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause." *Fair* v. *People's Savings Bank,* 207 Conn. 535, 541, 542 A.2d 1118 (1988).

From a fair reading of the record, we conclude that the commissioner found that the last ten years of asbestos exposure was a substantial causal factor in the worsening of Muldoon's respiratory condition. The commissioner found that Muldoon had suffered a "substantial increase" in pulmonary disability, but he never articulated any subordinate finding that this increase was simply an internal progression of the original disease. On the contrary, the commissioner specifically attributed this "substantial increase" to Muldoon's "exposure to asbestos from 1975 through 1984." Charged with the enforcement of the act; *Police Dept.* v. *State Board of Labor Relations,* 225 Conn. 297, 300, 622 A.2d 1005 (1993); the commissioner was well acquainted with the kinds of evidence generally submitted in connection with a claim under the act and with interpreting this evidence. Consequently, the commissioner's function was to determine the facts and draw all conclusions therefrom subject only to the requirement that these inferences must not result from an incorrect application of the law to the subordinate facts or be illegal or unreasonable. *Hansen* v. *Gordon,* 221 Conn. 29, 31, 602 A.2d 560 (1992); *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

Our review of the record reveals that the only medical evidence submitted was from Mark Cullen, Muldoon's treating physician and director of the occupational medicine program at the Yale School of Medicine. He concluded, in 1987, that Muldoon suffered from "a severe mixed respiratory tract impairment

. . . [that] corresponds to a loss in both lungs in the range of approximately 75 percent." In 1989, Cullen reported that "[w]hile there is I think no doubt from both the patient's record and the most existing epidemiologic data that asbestos exposures occurring to Mr. Muldoon prior to 1975 probably have played the major role in the causation of his asbestosis and colon cancer, it would be my opinion that continued exposure to asbestos has played a contributing role in both regards. Regarding the asbestosis, the basis of this belief is quite clear. The data are now sufficient to recognize that while only a small minority of individuals with asbestosis who are removed from exposure go on to further progression, a majority of those with continued exposure will progress. Given that Mr. Muldoon has shown some progression between the mid1970s and the mid1980s during a period of time in which he worked, *I would have to attribute at least some of this progression to the continued work with reasonable medical certainty.*" (Emphasis added.) In view of this undisputed evidence, the commissioner could reasonably have concluded that the post-1974 exposure contributed to Muldoon's increase in disability.

Further, Muldoon argues that the Appellate Court's focus solely on Cullen's use of the term "progression" to overturn the board's decision was a mischaracterization of the evidentiary basis of the commissioner's finding of fact. We agree. Although the medical report states that Muldoon's increased disability was a progression of the same disease, the report also attributes, with reasonable medical certainty, some of the progression to Muldoon's continued work with asbestos from the mid1970s to the mid1980s. Because "the commissioner's determination was not based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them"; *Fair* v. *People's Savings Bank,* supra, 207 Conn.

546; we conclude that the board, bound by these findings, appropriately characterized this "substantial increase" in Muldoon's pulmonary condition as a new injury.[8]

We next determine whether, in light of these findings, the 1977 stipulation precludes the present claim. The defendants argue that under the stipulation, Muldoon's 1987 claim constitutes "future . . . claims for . . . future expenses . . . due or to become due at any time . . . on account of any condition in any way resulting out of the said injury . . . ." The stipulation explicitly states that the parties understood it "to deal with any and all conditions, known or unknown, which exist[ed] as of the date thereof, or any changes of conditions which may arise in the future on account of said alleged occupational disease . . . ." Relying on this language, the defendants argue, in effect, that any claim for an increase in disability resulting from asbestosis of the lung is barred by the stipulation. We disagree.

Initially, we note that although this court has been called upon many times and in a variety of contexts to interpret the terms of a stipulation, we have only rarely been faced with a settlement agreement arising out of a workers' compensation claim. An overview is therefore appropriate. "A stipulation is a compromise and release type of settlement similar to settlements in civil personal injury cases where a claim is settled

---

[8] At oral argument, Muldoon suggested that the defendants' argument that his disability was merely an exacerbation of a prior injury would effectively undermine the purpose of the Second Injury Fund, which covers the case of "an employee having a previous disability incur[ring] a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone . . . ." General Statutes § 31-349. Because we uphold the award of benefits in this case and remand for further proceedings, we need not address Muldoon's concern.

with a lump sum payment accompanied by a release of the adverse party from further liability." J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 207–208. Although the act does not explicitly provide for this type of settlement, we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. *Sugrue* v. *Champion*, 128 Conn. 574, 578–79, 24 A.2d 890 (1942). There are three types of stipulations: (1) a full and final stipulation that closes *all* aspects of the claim whether they are for past, present or future wages and medical expenses, known and unknown; (2) a stipulation to date that is used to close out only a portion of a claim with the remainder left open or that is used to close out an entire claim but only up to a certain date; and (3) an open medical stipulation that closes all aspects of the claim except for medical expenses that are related to the accident or the disease. A. Sevarino, Connecticut Workers' Compensation After Reforms (1994) p. 233. As in the case of a voluntary agreement, no stipulation is binding until it has been approved by the commissioner.[9] J. Asselin, supra, p. 208.

In this case, the board concluded that the commissioner properly had determined that the 1977 stipulation was a settlement of all claims, known and

---

[9] The commissioner decides whether to approve a stipulation only after thoroughly reviewing it, along with all the pertinent medical bills and reports, and after evaluating employment possibilities and any concurrent claims. The commissioner undertakes such exhaustive inquiry in order to judge properly whether the stipulation is fair and comprehensive. A. Sevarino, supra, pp. 232–36. We can therefore assume that a commissioner is well acquainted with the terms generally used in stipulations and the proper interpretation of such terms. This responsibility is consistent with other authority conferred upon commissioners by the legislature. See General Statutes § 31-296 (commissioner to approve voluntary agreements where they conform in every regard to provisions of act); General Statutes § 31-315 (commissioner has power to open or modify award).

unknown, arising from Muldoon's pulmonary asbestosis incurred as a result of the exposures between 1947 and 1974. Because the substantial increase in pulmonary disability was based upon exposure to asbestos from 1975 to 1984, the board concluded that the commissioner properly had determined that the new injury was outside the scope of the stipulation. Muldoon does not dispute that the stipulation encompasses the consequences that directly flow from the original injury. Rather Muldoon contends, as the commissioner found and the board affirmed, that because his increase in disability resulted from a new injury and not merely from a recurrence or exacerbation of the old injury, his present claim for workers' compensation benefits survives the 1977 stipulation.

We agree with this conclusion because to decide otherwise would conflict with public policy and the remedial purpose of the act. Except in very rare instances, the settlement and release of a claim does not cover claims based on events that have not yet occurred. See, e.g., *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 185, 183 A. 887 (1936) (" 'The general words in a release are limited always to that thing or those things which were specially in the contemplation of the parties at the time when the release was given. But a dispute that had not emerged, or a question which had not arisen at all, cannot be considered as bound and concluded by the anticipatory words of a general release.' "). "The usual general release, then, is not ordinarily construed to include in its coverage claims based upon occurrences which have their beginning after the instrument is executed." H. Havighurst, "Principles of Construction and the Parol Evidence Rule as Applied to Releases," 60 Nw. U.L. Rev. 599, 611 (1965). For that reason, language covering "future claims" and "unknown claims" in releases is ordinarily construed to cover only inchoate claims that are in

being at the time of release but which have not yet manifested themselves. Id., 611, 616.

We find the decision in *Chubb* v. *Amax Coal Co.*, 125 Ill. App. 3d 682, 466 N.E.2d 369 (1984), instructive. In that case, the plaintiff had settled a prior claim for total disability under a disability policy for the entire extent of the disability benefits. Id., 684. Thereafter, he returned to work for the same employer and incurred a second period of disability, for which he filed a claim. Id. The defendant argued that the claim was barred by the release obtained in connection with his first claim. Id., 684–85. In holding that the release of his first claim did not bar his second claim, the court explained the law regarding release of future claims as follows: "It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts. . . . The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction. . . . It is similarly stated that a release, no matter how broad its terms, will not be construed to include claims not within the contemplation of the parties . . . and, where the language of the release is directed to claims then in existence, it will not be extended to cover claims that may arise in the future. . . .

"This construction of the release [as limited to claims in existence at the time of the release] is further justified by considerations of public policy regarding the effect of the release on the parties' future relationship. As noted in legal commentary on the subject of releases, a release covering all claims that might later arise between the parties *'would constitute a consent to the [forgoing] of . . . legal protection for the future and would plainly be against public policy.'* [H.

Havighurst, supra, 616]. In the specific context of disability insurance, it has been observed that 'if [an] insurer were relieved absolutely of [all] liability for any future accidents, the coverage might as well be terminated, as it [would have] become a nullity.' " (Emphasis added.) *Chubb* v. *Amax Coal Co.,* supra, 125 Conn. 685–87.

Muldoon began his post-1974 employment with a preexisting condition of pulmonary asbestosis. The last ten years of employment, as the commissioner found, caused him to suffer an additional injury and a resulting increase in disability. If Muldoon had settled a prior claim for injury to his back and exacerbated that back condition by repetitive trauma in subsequent jobs to become totally disabled, his claim for disability benefits under the act would not have been barred by the stipulation. See, e.g., *Glynn* v. *Terry Corp.,* 8 Conn. Workers' Comp. Rev. Op. 87, 88 (1990). Under the facts of this case, we can find no justification for treating his asbestosis claim differently.

To deprive a worker, such as Muldoon, of coverage for new injuries from subsequent exposures to asbestos would violate public policy and contravene the purpose of the act, which is to be liberally construed to provide coverage for employees who are injured on the job. *Ash* v. *New Milford,* 207 Conn. 665, 672, 541 A.2d 1233 (1988) (act is remedial and should be construed liberally to achieve its humanitarian purpose). As this court has stated on numerous occasions: "The [act] is to be construed with sufficient liberality to carry into effect the beneficent purpose contemplated in that legislation, and not to defeat that purpose by narrow and technical definition." *Massolini* v. *Driscoll,* 114 Conn. 546, 553, 159 A. 480 (1932).[10]

---

[10] Muldoon also argues that even if the stipulation effectively bars his claim as to some of the defendants, it cannot release Crouse Nuclear Energy Services, Inc., and C.N. Flagg and Company because they were not parties to that agreement. In light of our disposition of the case, we need not address this claim.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings.

In this opinion the other justices concurred.