**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SUFFOLK CONSTRUCTION COMPANY, | : | No. 40 MAP 2019 |
| | : | |
| Objector | : | Appeal from the Order of |
| | : | Commonwealth Court at No. 2 REL |
| | : | 2017 dated March 18, 2019 |
| v. | : | |
| | : | |
| | : | SUBMITTED: December 17, 2019 |
| RELIANCE INSURANCE COMPANY (IN | : | |
| LIQUIDATION) (ANCILLARY MATTER | : | |
| TO IN RE: RELIANCE INSURANCE | : | |
| COMPANY (IN LIQUIDATION) 1 REL | : | |
| 2001) | : | |
| | : | |
| | : | |
| APPEAL OF: SUFFOLK | : | |
| CONSTRUCTION COMPANY | : | |

**OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: December 17, 2019**

This direct appeal of a decision by the Commonwealth Court involves a question of contract interpretation under Connecticut law. The Commonwealth Court found that the language of the contract was clear and unambiguous, thus precluding consideration of extrinsic evidence of the parties' intent. After careful review of the contract and the pertinent law, we conclude that the Commonwealth Court erred. We therefore vacate its decision and remand for further proceedings consistent with this Opinion.

In 1997, Suffolk Construction Company ("Suffolk") entered into a contract with the University of Connecticut ("UConn") for the construction of several buildings on UConn's

campus (hereinafter referred to as "the Project"). UConn secured insurance policies from Reliance Insurance Company ("Reliance") for the Project, naming Suffolk (and other contractors) as an insured. Suffolk completed the work in January 2001. The Reliance insurance policy was extended until January 2004 – three years after final acceptance of the Project. In late 2001, however, Reliance went into liquidation.

In 2013 and 2014, UConn complained of defects in the construction that resulted in damage to its buildings. UConn retained counsel and initiated legal proceedings against Suffolk and other contractors. The claims proceeded through mediation, and Suffolk put its insurers on notice of the claims. On March 22, 2016, Suffolk submitted a proof of claim to the Insurance Commissioner of Pennsylvania, as the statutory liquidator ("Liquidator") of Reliance.

In June of 2016, in the midst of Suffolk's attempt to obtain insurance coverage on its claim from Reliance, UConn entered into a settlement agreement with Suffolk and the other contractors ("Settlement Agreement"). The Settlement Agreement was between UConn, "on behalf of itself and its officers, directors, Trustees, insurers, heirs, personal representatives, successors, assigns and subrogees," and seven "Defending Parties" (one of which is Suffolk), "**on behalf of themselves and their respective insurers**, re-insurers, third-party administrators, attorneys, successors, sureties, parents, subsidiaries, affiliates, distributors, suppliers, agents, subcontractors, employees, subrogees, subrogors and their officers, directors and assigns." Settlement Agreement at 1 (emphasis added). The Settlement Agreement was entered into "to settle all claims **between and among** [UConn and the Defending Parties] arising out of or related to" the

construction work originally contracted for on UConn's campus. *Id.* at 2 ¶ G (emphasis

added). The Settlement Agreement called for the release of claims as follows:

> Upon receipt of the Settlement Sum described in Paragraph 2 below, the sufficiency of which is hereby acknowledged, UConn and the Defending Parties hereby **unconditionally mutually release and forever discharge each other, and their respective insurers**, sureties, re-insurers, third-party administrators, attorneys, successors, parents, subsidiaries, affiliates, distributors, suppliers, agents, subcontractors, employees, insureds, subrogees, subrogors and their officers, directors and assigns **from any and all claims**, actions, causes of action, demands, damages, rights or remedies, **past, present and future, known or unknown**, foreseen or unforeseen, **arising from or relating to the Project directly or indirectly** of whatever kind or nature, **including but not limited to claims for insurance coverage**, indemnity or attorney's fees, **that are in any way connected with the Project** including, but not limited to, errors or omissions in development, design, construction, provision of products or materials, equipment, sale or repair of the Project, or representations relating to the Project, **as well as claims for** contribution, apportionment, **indemnity, additional insured status**, defense costs and attorney's fees (the "Released Claims").

*Id.* at 3 ¶ 1A (emphasis added). The Settlement Agreement further provided, in pertinent

part, that its "purpose, intent and legal effect" was

> to extinguish the entire liability of the Defending Parties to UConn and to each other … arising out of or connected with the Released Claims, and to bar forever any recovery by way of subrogation, indemnity, contribution or any other claim against any Party by any other Party or any third-party regarding the Released Claims as set out in Paragraph 1 above. Each Party represents that it does not intend to and shall not pursue claims arising from or related to the Project and/or that are the subject of this Agreement and that each Party accepts the payments made or received in this case as full and final consideration for the claims of all Parties, including claims against each other for contributions, deductibles, set-offs, counterclaims, offset premiums, subrogation or any other claim directly or indirectly relating to this Project.

*Id.* at 6-7 ¶ 4. The parties to the Settlement Agreement acknowledged that they were represented by counsel, were aware of the legal consequences of the Settlement Agreement, and that it "contains the entire agreement between UConn and Defending Parties (and as between the Defending Parties) with respect to the Released Claims[.]" *Id.* at 8 ¶ 5, 9 ¶ 7.

Pursuant to the Settlement Agreement, Suffolk agreed to pay UConn $3,250,000, much of which was paid by its other insurers. Suffolk paid $800,000 out of pocket, which it contended was Reliance's responsibility pursuant to the proof of claim it submitted to Liquidator. On April 12, 2017, Liquidator issued a notice of determination regarding Suffolk's insurance claim, finding a value of $0.00. On June 12, 2017, Suffolk objected to the determination. Liquidator responded, raising several bases for its determination, including that Suffolk had expressly waived its right to seek insurance coverage in the Settlement Agreement. The parties jointly requested the appointment of a referee, which the Commonwealth Court did on October 16, 2017. *See* Pa.R.A.P. 3781(d)(3) (governing the assignment of a referee in liquidation proceedings).

On November 21, 2017, Liquidator filed a motion for summary judgment before the referee. On February 28, 2018, the referee issued a report and recommendation to the Commonwealth Court that it grant Liquidator's motion based on the language of the Settlement Agreement, which the referee found precluded Suffolk from seeking insurance coverage from Reliance. In so recommending, the referee relied on *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 746 A.2d 1277 (Conn. 2002) ("*Tallmadge*"), finding

that Connecticut law provides that where a settlement agreement is clear and unambiguous, courts cannot read in language to reflect the intent of the parties.[1]

Suffolk filed exceptions to the report and recommendation issued by the referee. Specifically, Suffolk challenged the finding that Suffolk released its own insurers via the Settlement Agreement and asserted that Reliance/Liquidator was not a party or an intended third-party beneficiary and thus was not entitled to enforce the agreement. In a non-precedential single judge decision, the Commonwealth Court adopted the report and recommendation of the referee and dismissed Suffolk's exceptions.

The Commonwealth Court found that the language of the agreement was "definitive, clear and unambiguous," and reflected that the parties "extinguished their right to pursue subsequent claims against their own insurers." Commonwealth Court Opinion, 3/18/2019, at 10. Because the language was deemed to be clear and unambiguous, the court recognized that Connecticut law required it to look only at the four corners of the agreement, examining it as a whole and giving effect to every provision. *Id.* at 9-10 (citing *Tallmadge*, 746 A.2d at 1288; *Dunn v. Etzel*, 141 A.3d 990, 994 (Conn. App. 2016)).

The Commonwealth Court noted that by the terms of the Settlement Agreement, the parties included (in relevant part) UConn and Suffolk, as well as their "respective insurers" and that the parties released "their respective insurers … from any and all claims

---

[1] The Settlement Agreement provides that Connecticut law applies to actions to enforce the agreement. Settlement Agreement at 9 ¶ 8. Notably, it also provides that actions to enforce the agreement must be brought in a state or federal court in Connecticut. *Id.* Neither party seeks to apply this provision or challenges this Court's in personam jurisdiction. *See Wagner v. Wagner*, 768 A.2d 1112, 1119 (Pa. 2001) (finding the failure to object to personal jurisdiction results in waiver); *see also Morgan v. Hartford Hosp.*, 21 A.3d 451, 458 (Conn. 2011) (same). As Liquidator is a Pennsylvania party, and there has been no objection to Pennsylvania courts deciding this matter, this provision does not interfere with our ability to render a decision in this appeal.

… including claims for insurance coverage and indemnity." *Id.* The court observed that the agreement released the parties' "insurers" generally, and that there was no basis in the language of the agreement to find, as Suffolk claimed, that the parties intended to release only insurers who were parties to the agreement or that the parties did not intend to release their own insurers. *Id.* at 10-11. The court further stated its belief that claims for insurance coverage and indemnity are benefits obtained through one's own insurer, and the inclusion of this language in the agreement demonstrated that the parties intended to relinquish their rights to pursue claims against their own insurers. *Id.* at 11. The Commonwealth Court thus agreed with the referee that Suffolk released Reliance from any obligation to make payment on its claim for insurance coverage, and parol evidence of the parties' intent was properly ignored. *Id.* at 12 (citing *Venture Partners, Ltd. v. Synapse Tech., Inc.*, 679 A.2d 372, 375 (Conn. App. 1996).

Because the Settlement Agreement was executed by the parties on behalf of themselves and their insurers, the Commonwealth Court further found that Reliance could enforce the agreement as a third-party beneficiary. By the express language of the agreement, the parties "intended to confer enforceable rights on their insurers, even though such insurers were not specifically identified." *Id.* at 13; *see Wilcox v. Webster Ins., Inc.*, 982 A.2d 1053, 1062 (Conn. 2009) (right to enforce a contract as a third-party beneficiary depends on whether the parties intended that the promisor has a direct obligation to the third party).

Suffolk filed a direct appeal to this Court, raising the following issues:

> [1.] [W]hether the Settlement Agreement executed between Suffolk and UConn clearly and unambiguously released Suffolk's pending unanswered claims against [Reliance].

[2.] [W]hether [Reliance] was a third-party beneficiary to the Settlement Agreement, wherein Suffolk did not intend to confer any benefits to Reliance or the Liquidator, such that it was entitled to reap its benefits or enforce its terms.

Suffolk's Brief at 4.

Suffolk contends that the language of the Settlement Agreement did not clearly and unambiguously release its claims for insurance coverage against Reliance/Liquidator. According to Suffolk, the agreement "is subject to more than one reasonable interpretation": (1) that the parties did not release their own insurers and (2) given the circumstances of the parties, which Suffolk says Connecticut law requires to be considered, including the pre-agreement attempts to obtain coverage from Reliance, Suffolk did not intend to release Reliance. Suffolk's Brief at 12.

Beginning with its first stated interpretation, Suffolk asserts that there is no language in the agreement indicating the parties are releasing their own insurers. Instead, the language indicates that UConn and the Defending Parties released each other and each other's insurers from any claims. *Id.* at 14. Suffolk states that it acted on Reliance's behalf to secure its release from claims by UConn, but not itself. *Id.* at 15. The Commonwealth Court's interpretation leads to an absurd result, as this would also mean, for example, that Suffolk could not bring action against one of its officers or directors for misappropriation of funds connected to the Project if that occurred. *Id.* at 16. It would also preclude, for example, UConn from seeking insurance coverage for a fire that occurred in the subject building. *Id.* at 19-20.

In support of its second interpretation, Suffolk cites *Tallmadge* and *Muldoon v. Homestead Insulation Co.*, 650 A.2d 1240 (Conn. 1994), as requiring consideration of the

"situation" of the parties in determining their intent in drafting a contract/release. Suffolk's Brief at 17-18 (citing *Tallmadge*, 746 A.2d at 1288; *Muldoon*, 650 A.2d at 1246). Suffolk argues that it clearly did not intend to release its insurance claim against Reliance, as it was pursuing coverage both before and after entering into the Settlement Agreement. *Id.* at 18.

Suffolk further asserts that the Commonwealth Court failed to give effect to every provision of the agreement, as required by Connecticut contract law. *Id.* at 20 (citing, inter alia, *Ramirez v. Health Net of Ne., Inc.*, 938 A.2d 576, 586 (Conn. 2008)). In particular, Suffolk points to paragraph four of the agreement that provides it is extinguishing "liability of **settling** parties," which does not include Reliance or Liquidator. *Id.* at 21 (emphasis supplied). It further asserts that the referee ignored the word "respective" in the Settlement Agreement, and that this term makes clear that the parties were only releasing each other's insurers. Suffolk's Reply Brief at 2-6.

Lastly, Suffolk claims that Reliance/Liquidator is neither a party nor a third-party beneficiary to the settlement agreement and therefore cannot enforce it. Pursuant to Connecticut law, "a third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party," which is "read in light of the circumstances attending its making, including the motives and purposes of the parties." Suffolk's Brief at 22-23 (quoting *Stowe v. Smith*, 441 A.2d 81, 82-83 (Conn. 1981), and *Condon, Inc. v. Brookfield Dev. Corp.*, 833 A.2d 908, 914 (Conn. 2003)). Suffolk asserts that Reliance/Liquidator has failed to satisfy that burden.

Liquidator argues that the terms of the Settlement Agreement clearly and unambiguously release any claims Suffolk had for insurance coverage from Reliance related to the Project, noting that it releases "insurers" from "claims for insurance coverage." Liquidator's Brief at 11. Because the agreement is unambiguous, Connecticut law prohibits looking outside of the contract for evidence of the parties' intent. *Id.* at 13 (citing *Tallmadge*, 746 A.2d at 1292). Liquidator states that Suffolk only partially quotes *Tallmadge*, ignoring the portion of the decision that provides, "the intent of the parties is to be ascertained by a fair and reasonable construction of the written words," and "where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Id.* at 18-19, 20 (quoting *Tallmadge*, 746 A.2d at 1288). Further, "any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of its terms." *Id.* at 12 (quoting *Tallmadge*, 746 A.2d at 1288). Because there is no ambiguity in the agreement, and it cannot be subject to more than one reasonable interpretation, Liquidator contends that Suffolk's argument fails. "Insurers" means "insurers," all of which were released in the agreement. *Id.* at 22.

Contrary to Suffolk's claim, Liquidator states that this interpretation is not absurd, as the parties to the agreement intended to end all litigation related to the Project. Liquidator raised other defenses to Suffolk's insurance claim against Reliance, and thus UConn and other of the Defending Parties would be pulled into discovery, depositions and document requests – precisely the activity the Settlement Agreement was to end. *Id.* at 17-18. Further, Liquidator contends that the hypotheticals posed by Suffolk are absurd,

as the Settlement Agreement released only certain claims concerning the construction of the buildings. *Id.* at 22-23.

Liquidator asserts that the fact that Suffolk had already submitted a claim for insurance prior to entering into the Settlement Agreement is of no moment; it could have reserved a claim against Reliance in the agreement but it did not, and there is no basis to parse which insurers the agreement was intended to release, as it generally released "insurers" from further claims for insurance coverage related to the Project. *Id.* at 16, 26. Liquidator states that Reliance is unquestionably a "settling party" under the agreement, as the agreement expressly states that Defending Parties were acting on behalf of themselves and their insurers. *Id.* at 23. It therefore has the right to enforce the Settlement Agreement against Suffolk's claim. *Id.* at 27-28.

As stated above, both parties (as well as the Commonwealth Court) rely on the law as stated in *Tallmadge* as controlling.[2] The case involved a negotiated settlement agreement between the parties concerning the defendant's construction of an underwater natural gas pipeline across the plaintiff's shellfish beds. Pursuant to the agreement, the plaintiff took a lump sum of money prior to construction of the pipeline and released the defendant from any liability incident to the construction. At the time they entered into the agreement, the plaintiff believed that the pipeline would cover a 200 foot area, but this understanding was not included in the agreement. In actuality, the area impacted by the pipeline was 300 feet.

---

[2] "[B]ecause … settlement agreements are commercial contracts containing definitive language, the determination of the parties' intent is a question of law[,] and our review of the trial court's construction of the settlement agreements is plenary." *Tallmadge*, 746 A.2d at 1288 (internal citations omitted).

The plaintiff filed suit against the defendant for the damage caused outside of the 200-foot area, and it ultimately reached the Connecticut Supreme Court for decision. Of relevance to the case at bar, the *Tallmadge* Court found that the language of the agreement was clear and unambiguous, resulting in a finding that the plaintiff had released the defendant from liability connected with the pipeline's construction. *See Tallmadge*, 746 A.2d at 1288-89. On that basis, it concluded that the trial court's consideration of extrinsic evidence of the parties' intent was error that "cannot be squared with our well settled principles of contract law." *Id.* at 1290. While the Court recognized, pursuant to long-established precedent, that contract interpretation requires a determination of the intent of the parties based on their "situation … and the circumstances connected with the transaction," it observed that "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Id.* at 1288. "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* (brackets and ellipses supplied). Further, Connecticut precedent dictates that where an unambiguous contract contains a merger clause indicating that it is the entire and final expression of the agreement, extrinsic evidence may not be used to vary or contradict those terms (absent fraud). *Id.* at 1291. Any ambiguity in a contract "must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Id.* at 1288.

Thus, according to the Connecticut Supreme Court, where the language of a settlement agreement is clear and unambiguous, evidence outside the four corners of the

contract is not admissible to prove the parties' intent. The *Tallmadge* Court did not consider evidence outside of the four corners of the contract because the language of the agreement was unambiguous and contained a merger clause, which provided, "This Agreement contains the entire and only agreement between the parties and no oral statements or representations or prior written matter not contained in this instrument shall have force and effect." *Id.* at 1291. The Court thus found that there could be no consideration of evidence of the parties' intent outside of the language of the contract. *Id.*

Based on our review of the Settlement Agreement, we disagree with the Commonwealth Court's determination that the pertinent terms of the Settlement Agreement clearly and unambiguously precluded Suffolk from filing its claim for coverage from Reliance. The operative phrase relied upon by the Commonwealth Court as unambiguously releasing Reliance from any obligation to provide coverage on insurance claims related to the Project was the parties' release of each other and "their respective insurers" for "claims for insurance coverage and indemnity." Commonwealth Court Opinion, 3/18/2019, at 10.

At the outset, we note that the Commonwealth Court was incorrect in its assertion that indemnity can only be claimed against one's own insurance company. Although an indemnification claim can be brought against one's own insurer, there are myriad cases involving claims for indemnity from non-insurance parties. *See, e.g., Maio v. City of New Haven*, 167 A.3d 338 (Conn. 2017) (indemnification claim brought by police officer against the city); *Singhaviroj v. Bd. of Educ. of Town of Fairfield*, 17 A.3d 1013 (Conn. 2011) (indemnification claim brought by IT engineer against town). In the context of this case, the release of claims for indemnification could have been between and among the

Defending Parties or by one of the Defending Parties against UConn. We therefore disagree that releasing actions for indemnification clearly and unambiguously indicates that the parties intended to release their own insurers from financial responsibility for claims arising from the Project.

Further, while there is an isolated statement in the agreement that provides that the parties released claims for "insurance coverage," it is entirely unclear what that phrase means. It could mean, as the referee and Commonwealth Court found, that the parties agreed not to seek coverage for insurance claims from its own insurers. Alternatively, it could mean that one party would not sue another for the failure to provide promised insurance coverage (or provided inadequate insurance coverage). The latter interpretation is particularly salient here for several reasons. First, as stated hereinabove, UConn purchased the Reliance insurance policy in question as part of the Owner-Controlled Insurance Program for Project naming Suffolk as an insured. In fact, as Reliance acknowledges in its brief, UConn purchased insurance under the Owner-Controlled Insurance Program from that company for all of the Defending Parties (other than the architect). *See* Reliance's Brief at 3. Thus, it is feasible that one of the Defending Parties could have a claim against UConn for failing to purchase sufficient insurance coverage for the Project.

The other pertinent language included in the Settlement Agreement could also support a finding that Suffolk did not release its own insurers from providing insurance coverage. *See Se. Conn. Reg'l Res. Recovery Auth. v. Dep't of Pub. Util. Control*, 709 A.2d 549, 556 (Conn. 1998) (interpretation of contract language for ambiguity requires court to look at "the contract as a whole"). Critical to this Court's analysis is the meaning

of the word "respective," which is used more than once in the agreement. First, the Settlement Agreement states that the agreement was entered into by all of the Defending Parties on behalf of themselves and their "respective" officers, employees, subcontractors, parent companies, agents, attorneys and insurers. Settlement Agreement at 1. Viewed in context, it is clear that the Defending Parties are binding themselves to the agreement, and similarly binding the named entities. The dictionary definition of "respective" is "particular, separate." *See* https://www.merriam-webster.com/dictionary/respective. *See Nation-Bailey v. Bailey*, 112 A.3d 144, 152 (Conn. 2015) ("We often consult dictionaries in interpreting contracts … to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or conversely, have varying definitions in common parlance.") (internal quotation and citation omitted). Given this definition and the context in which the word "respective" is being used in the afore-quoted clause, this can only mean that each Defending Party was entering into the agreement on its own behalf and on behalf of its own insurers (and employees, officers, attorneys, etc.).

The Settlement Agreement uses "respective" again later in the agreement, in the clause relied upon by the Commonwealth Court to support its finding of no ambiguity. As stated above, the pertinent clause states that the Defending Parties (i.e., Suffolk, on behalf of its insurers, attorneys, employees, etc.) release each other (i.e., the other Defending Parties) "and their **respective insurers**," attorneys, employees, directors, subcontractors, etc., from claims "arising from or relating to the Project directly or indirectly of whatever kind or nature." *Id.*, at 3 ¶ 1A. Based on the prior use of the word respective, as well as its plain meaning, it would be incongruous for "respective" to now

mean that the Defending Parties were each releasing their own insurers (and employees, attorneys, directors, etc.). In fact, it would be nonsensical for Suffolk to have waived any claims against its own attorneys, for example, for malpractice committed concerning their representation related to the Project. It would be even more nonsensical for the Settlement Agreement to bar Suffolk's attorneys from pursuing an action to obtain payment on unpaid bills related to the Project. The Commonwealth Court's interpretation, however, would lead to precisely these results.

Pursuant to our review, the Settlement Agreement can be construed as nothing more than a mutual general release between UConn and Suffolk (as well as the other Defending Parties). At best, the language is ambiguous as to whether Suffolk released its own insurers, including Reliance, from providing insurance coverage for claims related to the Project. The ambiguity stems not from Suffolk's "subjective perception" of the terms of the Settlement Agreement, but from the terms of the agreement itself, as the language releasing claims for "insurance coverage" and "indemnification" does not have a single, clear meaning. *See Tallmadge*, 746 A.2d at 1288. As such, the Commonwealth Court and referee erred by failing to consider extrinsic evidence, outside of the terms of the Settlement Agreement, to discern the parties' intent.

As we conclude that the language of the Settlement Agreement is ambiguous, we need not decide whether Reliance was a third-party beneficiary to the Settlement Agreement, as this likewise involves a question of the parties' intent. *See Wilcox*, 982 A.2d at 1062. The Commonwealth Court is therefore also instructed to reconsider this question on remand in light of our decision.

For the reasons stated herein, we vacate the decision of the Commonwealth Court and remand the case for further proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Todd, Dougherty, Wecht and Mundy join the opinion.

Justice Baer files a dissenting opinion.